vs. the United States. Well, as soon as they're, you're finished. Thank you. We'll hear counsel in Reyeros, the Reyeros brothers.  I'm scared of you though. May it please the court. My name is Peter Goldberger, and it's my privilege this morning to represent Jorge Ray Aros With the court's permission. I'd like to make an adjustment in our division of the yeah Based on our conversations yesterday about how we were gonna go I think I'd like to give one of my ten minutes back over to Mr. Schuster, and I would take your nine He'll take 11 and do the rebuttal He'll do the rebuttal and as you know Our questions may take you over. I can't imagine not as much as the previous chief judge Was listening to the previous case After a two-month trial the jury here acquitted my client Jorge Ray Aros of all the Primarily dealing with 97 and convicted him of just two counts having to do with a single alleged plan in 1999 to import cocaine from Columbia through Ecuador an enormous amount of cocaine 400,000 to 500,000 grams It's fantastic Yeah, but they were but this was a conspiracy yes, exactly yeah fantastic is a good word for the plan Well, no, I meant in terms of the quantity that's I know and I'm saying I know what you're saying If you think about whether such a plan could actually have been pulled off Of course not of course Mr. Schuster is going to talk more about and primarily about the ways in which This prosecution was presented in a confusing and unfair way and why a new trial would be warranted in any event He's going to emphasize that the Brady Entrapment as a defense And and those points that Mr. Schuster is going to make with maybe one exception are applicable to both My part of the time if if I may I'd like to focus on the sufficiency of knowledge and specific intent as it replies directly to Jorge This trial lasted two months because because the government chose to present a mind-boggling Analysis of how Jorge Ray Aros used his computer at work One the judge Bassler interrupted and asked what's going on Hart, what are you trying to prove? How's this supposed to go? So you're troubled they presented too much evidence Yes, I was the government's problem perhaps It got them nowhere on the 1997 the point, but that's we understand your argument Because it all came in and it into right I'm just saying that the trial evidence Interrelates with the sufficiency evidence because in the end what the sufficiency argument boils down to is a case I'm very much like cases that this court has seen a dozen times before That is what is the evidence that this particular defendant had knowledge of object What is and and the knowledge is necessary to prove the specific intent of course But this case actually is stronger than a lot of those cases Because in many of those cases from 1984 to You know just constantly coming up our cases in which the defendant to be not guilty of the charge has to have thought that some other crime was being committed and And he's not guilty of the particular accusation because maybe you know There's a reasonable doubt that he thought it was a different kind of criminal conspiracy here. It's The alternate theory is not even necessarily one of an alternate criminal activity, but misuse of the computer Perhaps to help the brother without necessarily knowledge of anything illegal at all because importation is really lawful I'm sorry here misuse of the computer is one of the bases is one of the counts of which he was convicted, right? That's right He was committed on one of those counts and it's important to just bear in mind that there are is a kind of a simple And and an aggravated form of that offense so misuse of the conspiracy is an offense misuse of the conspiracy for the purpose of facilitating misuse of the computer Conspiracy but you mean misuse of the computer is in and of itself an offense I mean there's somebody who's a customs inspector. Oh, yes, and and and to be frank. You're not challenging the sufficiency of the Unaggravated level of that offense the jury convicted of the aggravated misuse crime Which is misuse for the purpose of furthering against this kind of conspiracy What's the jury given the alternate of? the aggravated as distinguished from the non Charged on that of course, but they would be told to look at the aggravated first if you find that then don't Don't go under right But if the insufficiency lies in the element that distinguishes the two the court could either reduce it And what is the element that distinguishes or the purpose of furthering? Conspiracy the criminal conspiracy Subsection So here the the evidence on which the the court relied wrote a written opinion gave us a written opinion afterwards for sufficiency Is turns out to be all this well. I say double hearsay, but technically it's not hearsay because it's So then don't say it. It's in the nature of double hearsay. That is Uribe says How is it in the nature of double hearsay? If the rule says it's not it's not hearsay in the way The word hearsay is defined in rule 801. Okay, that's that's the rule. We're operating under right? Mr. Goldberg, that's it is admissible evidence under the co-conspirator Certain evidence we write this is not about the admissibility of the evidence But the sufficiency of that evidence and the weight of that evidence does count in a sufficiency analysis is indeed our argument It's weird. This is not a no evidence Insufficiency case this is an insufficient Evidence case and and part of your argument is that evidence that the federal rules of evidence say is perfectly admissible Is not really Worthy of credence because it's of the nature of hearsay that is relevant to wait where wait is pertinent Yes, yes and the cases say that Accomplice evidence alone can be sufficient that hearsay evidence alone can be sufficient that co-conspirator testimony alone can be sufficient, but the language in those cases is cautious and there's to say yes that the in the co-conspirator turned in turned cooperating witness says that Another co-conspirator said that his brother had the knowledge and intent that's our case but the facts show I think the unbudgeted fact show that Jorge a Customs inspector you access the computer to learn information about the TJ company a company a sham company that the government set up and If he did that can't the jury infer and since he had no no other reason reason to look for the TJ company can't the jury reasonably infer that he did that as part of this conspiracy to send all this cocaine To this TJ company isn't that a reasonable inference no by the jury why not? That's exactly our case of course. That's exactly the question right and Yes, he must have had and some Off the off job purpose in accessing the computer, and that's why I'd refer to for the not just access He didn't access it to know right what the you know what his girlfriend's license plate is he accessed it to know about the Process yes of the TJ company could infer that his brother had asked him to do this favor for him Right well, why shouldn't they what purpose why couldn't they also infer based on the co-conspirator statements? if the if the evidence is Jorge knew how do you know I know because Todd conversation with his brother tells me that Jorge knew and then you couple that with Jorge's in fact doing things with the computer that indicate He's involved Where's your insufficiency argument there, that's you're saying that's not enough There's all respect to say he's involved puts the rabbit exactly in the hat. It's he is involved in misusing his government computer to Respond to a request from his brother, but did his brother tell him why well? That's that is what where could the jury it's error that the brother would have chose chosen in fact To let him in on this and you have another because the co-conspirator says that right you've got two things And says the brother says it right so if you have those two things. It's not as if You've got either in isolation. You've got both things happening, right right so So the question is you seem to be arguing that there's an that the Inferential step is impossible, but there's no no all right But perhaps a fair way to say it is that the inferential step Is so extreme that it's it's an unfair step or the evidence isn't enough Because that inferential step is so extreme, and I'm I'm trying to get from you Wow, if you've got what's your reasoning for that? Why is it why could a jury not see those things happening at the same time statements about involvement and actions that imply? Some involvement and say oh the involvement is he knows because they say he knows what's wrong with that step First of all somebody says that somebody else said that he knew Someone else who has an interest in saying that and has wait a minute So who let's assume what is the interest who is the somebody and what is his interest assume which mr. Schuster will not appreciate that a rebate is telling the truth about what one said okay, and Okay, and that goes to the jury together with your rebates testimony that one said or Jorge Doesn't want to be involved if it's a little a little bit of cocaine Only if it's a big enough amount right of cocaine or drugs. It's only gonna put this at risk for a real big score Basically yeah, right. That's the point that was obviously the point That's the other the other which the district judge did not mention his opinion But I found in the record and included in my brief because it's appropriate It was it's and it's now a key part and the government puts it in its brief to I got there first at the And I think that's and of course that's pertinent very pertinent But the question and and what do I rely on I rely on this large really extensive line of Third Circuit authority in which in very Suspicious circumstances people are found not to have been shown beyond a reasonable doubt to have known it was a drug deal Including the guy who stays in the hotel room with the drug dealer whose shipment Driving in the truck that he doesn't look into the back of across the country and the guy who is quote doing Counter surveillance well around the parking yeah now that line began with Wexler Well, I think I looked up you argued Wexler, and I'm ready to go this year, and I wrote Wexler So so we go back a long time, but this is not this is not the same as Wexler because here you have a Admissible statement statements by Uribe and You didn't have that kind of nexus in Wexler Wexler there was no statement They wait they waited for the for the truck, that's right, and that was it so that that's one of the many cases yeah But but here you have more You have the Statement twice removed statement and the the question is credibility and the juror who decides Credibility the jury can decide credibly the witnesses they see in here But how can the jury decide the you know you can't disregard the significance that the jury? cannot decide the credibility in the same way of The declarants not hearsay declarants, but the declarants who are not testifying and here and these two levels And I think that's why the cases that talk about this kind of evidence being theoretically sufficient None of which exists with the lack of clock corroboration that we have here That's what's getting when you say the lack of corroboration You discount to zero The computer activity right I don't mean to be discounting it to zero. I'm discounting it to very little Because you've got another agent Another customs officer Gorman whose computer is found to have access that same information also. He's not the only one And you have a rebate having quoted quoting Juan saying things which are patently not true that it couldn't be true that is that a bragging by Attributed to one whether one ever said these things or not my brother's job is to See that the drugs get through he can see that the Container is never inspected and the evidence is uncontradictory had no such authority It was no part of his job to do things of that kind so some of its nonsense and untrue and the cases say that Unless it is The court finds it to be incredible as a matter of law there is a sufficient There is there it seems to be a looking at evidence of this kind at the appellate level that you wouldn't otherwise expect to find Insufficiency cases we understand yes, and we fail that test your red light has been on for a while. Thank you mr.. Goldberger Mr.. Schuster Not yet, please the court, maybe we'll be out of here before it is Excuse me if I please if it please the court my name is Neal Schuster, and I have the privilege of representing one ray arrows today I raised a number of issues in my brief. I'd like to focus on Brady and sentencing yeah Specifically I believe that the prosecution misadvised the court about the facts concerning the contents of the Rebate case and the history of that prosecution and because of that it undermined judge Baxter's ability To fairly rule on the Brady issue and And the way that I think I could prove that to the court is to compare the statements made by the prosecution to judge Baxter with what we have filed as the Uribe letter which appears in the joint appendix pages 1 1 8 to 1 1 2 4 If I may I would like to start with a statement made by the prosecution on December 1st I Specifically appears in the supplemental appendix at page 1 9 9 2 This is the prosecutor It's my view that the defense is entitled to any prior Statements made by the witness that the government can get its hands on and we will make every effort to do that That is that is that Brady or is that Jenks isn't it isn't the prior statement Jenks I think in the context of this case as the court will see in analyzing joint appendix 1 18 to 124 that we're gonna see that there's it's Brady and Jenks and as as I With with then two weeks later, and I'm talking about what are you what are you calling our attention to on 1 18? I have it in front of me What what part of it I? Was inviting the court's attention first to the government's representation on December 1st To give the court the chronology the case was started to try in in in October Uribe was in jail since 2000 the 25th day of trial he shows up to testify in court and there had been almost no Disclosure on December 1st two weeks before the government thinks they're gonna get him there They tell the court that we're gonna give you his statements We're gonna try and get his statements and give it to you That's the context that I'm trying to the court believes. He's still in Columbia Yeah, he's still in Columbia and even though this case has been pending for four years They're gonna get him up there right before the end of trial So then what happens? After the government if I'm not making myself clear your honor allow me to clarify Originally the case was indicted just on the unlawful use of the computer Charge single count naming both defendants the government superseded an indictment and charged the drug Counts as well during this entire time period Uribe is in jail in Columbia He is resisting extradition and cooperating with law enforcement doing both so Mr.. Brown writing with Columbia law enforcement or u.s. Law both your honor, and that's what I'm going to prove to the court this morning So mr. Herman represents mr. Uribe December 14th supplemental appendix 2944 the government comes before the court and says I Spoken with the defense lawyer from mr. Uribe And he tells me that documents filed in opposition to extradition are essentially pro forma documents that contest the sufficiency of the evidence for the extradition as Opposed to factual statements, so it is relatively unlikely to contain any form of Brady well when you compare Joint appendix one one eight two one and through one two four you see that Uribe specifically talks about 20 promises made by the government, and he's talking about the Colombian government in conjunction with the United States government He's talking about being lied to and he's talking about deceit and a conspiracy And I ask you a question that may cut through this yes in order to be Brady material. It has to be exculpatory Yes, what's exculpatory? From from from I think it could go to impeaching the witness as well And if I could respectfully invite the court to the the letter, and I'm talking specifically about page 120 Uribe talks about specific meetings with federal law enforcement officials in Colombia on November 19th and 20 And he says 20 promises later all made by the prosecutor and dr. Cologne dr. Cologne is the DOJ Attaché to Bogota Embassy working with the DEA working with the Colombian prosecutors He's talking about 20 promises made by the prosecutor and dr. Cologne to prosecutor Munoz and to me and I gave the testimony that was asked of me He doesn't say he was giving truthful testimony He's saying I'm giving the testimony based upon those promises that was asked of me I'm referring to so you're you would have us read that to mean They told him what to say not was asked of me in the sense of I was asked questions, but was asked of me in the sense of They fed me a script in the hands of a skilled cross-examiner more skilled than me. Absolutely Absolutely, and if you go on to page six Where he says in the second to last paragraph it is obvious that there is pressure not to tell the truth I'm sorry, you got to give me the Appendix Again When he is using that term and he's using again on that page it is obvious that there is pressure not to reveal the truth u.s. Justice has 200 years of history and Examination is all about this is how some in this case. There's only two witnesses against One gray arrows, you got the double-dealing informant James Lang retoria Who is setting up a separate drug deal under the nose of the DEA with? Mr. Uribe while he's going to do this mission supposedly for the DEA, but you really did testify didn't he? Yes, so you did have the opportunity to question him and cross-examine him about Precisely what he meant by those statements we never got this statement your honor This statement was obtained after sentencing made part of the record on appeal on no no objection But by the government right during the sentencing during the questioning of mr. Uribe didn't you? And you're both very skilled lawyers. Didn't you try to? discount everything he said didn't you Vividly cross-examine vigorously no cross-examine mr. Uribe I mean he was your he was the government's whole case exactly and no they There wasn't a glove touched on him you based upon these document not a bit based upon this you didn't touch a glove on him About anything he testified to I in reviewing his cross-examination And please understand the context 28 day trial Uribe gets put on for cross-examination the 25th day of trial and that the the Brady disclosure in Spanish is provided December 14th approximately the 24th day of no no let's talk about I know that Mr.. Goldberger is an appellate lawyer, so I don't know who was the who was the trial counsel Ray Brown jr. Out of retirement came out of retirement to take a CJA appointment Okay, I'm sure and you're telling us. He wasn't vigorously cross-examined. I'm suggesting to the court It's a very big appendix my law clerk sitting there with well. That's because the government is able to able-bodied It's in ways Well Maybe we should let me ask it this way. I understand you to be making a couple arguments one is Sort of a jenks argument that we didn't get stuff as timely as we should have got it with respect to what we did get And then this separate Brady argument that there was Statements made in connection with him fighting extradition, which we didn't show up till sentencing Instead of getting those things across let's try to keep separate from it. I'm I misunderstanding you know your honor your honor is correct But I think what I have to focus. I wait let him if he didn't ask his question You were shaking your head like no, and I thought maybe you were telling me that I was misunderstanding your your Your your argument, but if I've got if I've got it, right I want to stick with the Brady piece for a second. That is the piece That you were just quoting from what's your? when did when did You said that the United States? Somehow knew about this it was in their possession because obviously Brady is only applicable to material under their control right yes, okay? So what's your evidence that this was within their control and they withheld it? your honor in the letter that we've submitted we think that letter and your rebase description of the interview process His meetings with the Colombian prosecutor the inquiry to the Colombian prosecutor The four phone calls in 2001 from the u.s. Attorney's office the repeated interviews of him by the Colombian people at the behest of the United States He also makes clear that based upon his 2002 interview with the agents who flew from the United States to meet with him in Colombia They knew little about the case until he spoke so in the context of that and then he talks about lies Pressures and 20 promises, I'm not trying to get it right. Yeah, I'm not trying to get into the substance because you've quoted the substance I'm trying to understand As a matter of historical fact What there is and what you presented to the what you've presented That you believe shows that what was happening in Colombia with Colombian authorities It was information that should be attributed to or knowledge that should be attributed to the United States and What I hear you tell me so far is They had You know, there's a close intergovernmental relationship and there was communication and and that Is the basis on which to conclude that the United States government had some control over this information? or constructive possession There's a part of the record reflects that there was a letter written by Carlo By Carmen Colón the DOJ judicial attache to Uribe's lawyer saying that you give us unbridled Cooperation we're going to protect your family. We're gonna do all this for you the letter from Uribe also talks about Carmen Colón Nunez as all in a working in a joint relationship What the defense sought your honor was simply an evidentiary hearing to this step to establish The factual basis for this joint venture with this particular individual Uribe and don't forget when I apologize for saying it like that Please keep in mind your honor that when judge Bassler was ruling on this motion He was saying that The government made a good faith effort where the record reflects that the only effort that the government made was to ask for Uribe's lawyer to provide the Brady documents so the Transmittal of those government exhibits for the most part have the facts of attorney defense attorney Larry Herman's when it came to the issue of the criminal history producing the criminal history of Uribe what occurred was the judge says look you got a The government council said well, I'll get it from Larry Herman and the judge says no that's not good enough You should pick up the phone and call the prosecutor in Columbia And he the judge says well who's the prosecutor and the government says miss Munoz they knew to call mr. Miss Munoz and get the file the only excuse the government came up with is we got everything for Larry Herman So we the defense attorney for the chief witness so we've satisfied our obligation and secondly the file was in court the record reflects That the government said the file was in court, but please This case was pending for four years the government had used MLATs to obtain the cooperation of mr. Uribe and Based upon this being the tip of the iceberg where there's smoke there's fire if this witness is talking about lies Deceit conspiracy, this is extraordinary fodder that wasn't used in the case I think now it's time to hear from the government. Thank you. Thank you I May have pleased the court your honor my name is Caroline And I think we might as well jump right into Uribe Uribe's letter that we were just discussing That was unearthed by the defendants after the prosecution And the accusations that Uribe made. What do you mean unearthed by the defendants the prosecution didn't provide this? The government didn't didn't have this letter the government did not have this letter of course the the the the accusation which it would be helpful for you to respond to maybe right off the bat is that You you had access to it and chose not to exercise that access That's the implication that you're working hand-in-glove with the Colombian authorities They if you say you want something they get it for you. You didn't ask him for this because you didn't want it What's your? response The first is that Uribe we didn't know Uribe was actually going to be able to come until the 11th hour No one's he still required a signature on his extradition papers But you wanted him. I mean you wanted him right you were trying to get him. He was your whole case so We didn't know he was coming is not much of an excuse for not asking for stuff that you would Know you'd need to turn over if you got him the way you wanted to get him so Yeah, if we got him we knew we needed this information Or no, I'll have to step back because I actually think the the agreed be First this was not a joint investigation, so we did not have an obligation to provide this information Okay, that's important. Don't go into that before you leave that point. This was not a joint investigation Go ahead the government Had fully investigated this case the United States government had fully investigated its case It's only involvement with the government of Colombia was pursuant to its MLAT treaty and treaty obligations for extradition It did not seek the involvement of the Colombian government in Investigating any aspect of this case and in fact the u.s. Agents were the only agents that we are we know of that investigated that conducted an interview with mr. Uribe in the prison and so Unlike cases in which the the government of the United States and the Colombian government actually set up joint monitoring of defendants or planned out Identified defendants together and and set up an investigation Columbia was only involved pursuant to its treaty investigation in treaty obligations and no case has ever found These kind of circumstances to constitute a joint investigation Are all these facts in the record? And and judge Bassler Made reference to this in his opinion, right? That's that was judge Bassler's initial finding is that this is not a joint investigation by any measure You said there were three things. So we're starting with that They're also saying that When it came to getting stuff You wanted you asked the prosecutor when it came to getting stuff. They wanted him You didn't bother to call the prosecution down there in Colombia. You got a hold some other lawyer a defense lawyer that the implication being You know, you were really not trying and that yeah, so what's your Response to us So the evidence that they admit is that we did contact the prosecutors that we made the effort They're cynical about the prosecutors response to us Unfortunately, the government stands on its position that it does not control the courts of Colombia and it does not control the prosecutor in Colombia It's a separate sovereign It can't insist that it goes to get the things from the file and there is no evidence that this prosecutor actually give us The file that was in court We had to go to a secondary source and the court also appreciated that we went to the secondary source to continue to try to find The document the secondary source being the attorney for the defendants What was it doing in court was Colombia prosecuting Uribe I think they were probably still considering the extradition I see Just before he was sent and the last issue is to materiality in my brief I reference a letter that the defendants did have which is in the appendix Brown pages 458 59 56 57 and this letter discusses promises You're saying that they had this letter, let me see if I understand what you're saying that they had this letter that they had the defense that they had the basis for cross-examination of Uribe on promises and lies The government was able to obtain the one in July of 2004 and pass it on to the defendants That's the one that's set forth starting at 456 And where and where is the where is the language in that letter that you say is comparable to what mr. Schuster points to the quote it is obvious There is pressure not to reveal the truth unquote language on page 123 of the joint appendix and which he says had we had that It would have been a whole different ballgame in that courtroom Sure on page 457 and paragraph 8 is the first there many promises were made of not seeking my extradition I asked many times of the same insistence about the document they had promised me This is on what page on page 457 continue on to 458 All right Paragraph 9, okay And on 460 it says there was a conspiracy by the assistant official at the US Embassy and three customs agents Because they already knew there was an indictment Suggesting that And this letter was disclosed during the trial prior to cross-examination Okay, I do you want to go Why don't you now go one to the sufficiency of the evidence I guess you you you started with Jenks and Brady, etc Did I mistake that Brady has to be? Exculpatory Impeachment yeah, I thought that's what our opinion said, okay The government the government discusses that standard and then the government discusses the fact Jury is entitled to credit your rebate Was he vigorously cross-examined Will you trial counsel? I'm sorry your honor. I was not you were not But the record does show that he was subject to my recollection is correct a day or two I Can't imagine the trial counsel would not have Examined So they're expected Therefore it's reasonable to give Tell us about the point mr. Kohlberger made Which is that There is an insufficiency of evidence that when Jorge Accessed The Computer on a Subject or in an area over which he had no official duties That there's nothing to show. I mean he sort of Admitted or conceded that there's enough evidence for the lesser of the accessing Computer Charges, I don't know. I haven't looked up because I was surprised at that what the difference in penalty would be but He says there's nothing to show that Jorge wasn't doing this only because his brother a Conspirator asked me to do it and maybe there's some suggestion He had done it before or that went to the first four counts of which he was acquitted I Yeah, but what is what evidence is there that Jorge had knowledge I mean there's evidence that one had I mean Had knowledge of cocaine and he very wisely didn't argue the insufficiency of the evidence as to one but What is the evidence that Jorge had knowledge Uribe's testimony that the court recognized that That Juan told him that or hey That is a double you have to go a double circle for that, right? But it was very it was very important to Uribe's role in the conspiracy because Uribe was charged with getting this large load of cocaine Why am I No 500 kilograms For lesser loads, this is very very credible story Maybe Juan was lying. Maybe Juan was just trying to I mean Juan never testified He didn't have to maybe he was just sort of Upping the ante in a way What was there to show that? Jorge really wasn't really didn't know On a sufficiency motion at this point the jury believed that Uribe was lying about Juan and Juan was lying that it could have reflected that in his verdict Furthermore the jury could rely on the circumstantial evidence of Jorge's involvement in this crime and this is very unique. Be specific. What's what's the circumstantial evidence that was Supporting in which this court is that you know Here is a person who's carrying our back or driving our car and we really don't have evidence George was Juan's brother and He was a customs official Okay, well that that that certainly goes to what he had at risk What's the what's the circle? What's the inferential step that takes you to so he knew it was cocaine that Juan was asking him to help bring in to the country? Okay Now that by itself I guess wouldn't be enough would it because you wouldn't contend that it's quite likely is the standard of proof here Is it? Quite likely that he knew great. I mean, we're talking about But I think What about the statement of Uribe that this is the way we're going to split up the money Isn't isn't that in isn't that in mind the wrong case? And and Jorge gets this percentage Juan gets this percentage You didn't So you're saying that if the jury believed Uribe Let me see if I can understand what you're saying Uribe's Statement and this was who set the the split. This is how it was split it up your a be Uribe or Juan I remember that Lebron Correa testified to this And tell us And he was he was the inside person that the government had there the government and he worked for the customs People too, so the government had its Inside man In the part of the paper we're talking about 404B statements And we discussed that Lebron Correa's testimony about the split of the payments came right before a testimony that defended him And and who made the and not so much and he testified Lebron Correa Yeah, but who who? Decided how the split should be according to his testimony Was it Juan or Uribe? Well, we can we can find it too. I just thought you might know okay Well, I I was going to ask you this I haven't seen the transcript of the trial I Take it that the credibility questions that we've talked to you about in terms of Uribe were fully presented to the jury by Defense counsel and arguing that there was insufficient evidence For example, when we were in the process of identifying the company and managed to identify the company after it was created by customs, specifically for the purpose of loitering in the customs official's door, she noted that it was a strange entry into customs data. There's no evidence so much, and specifically that George should have access to the company. Let me quote you something from the district court's opinion. Judge Bassler said, in addition, Uribe corroborated LaGuardia's testimony that George, I'm assuming he goes by George and not Uribe, that George Rieros was researching companies for his Did you tell us any more about that piece of evidence that the district court was relying on that LaGuardia was also saying something about George's involvement and that George was in the know? I don't know the specific site in the record that the court is referring to, and I can see if I can transcripts of phone conversations between Juan and the co-conspirators, including LaGuardia, included references, many references to my person in New Jersey, my brother in New Jersey will check that company. And this is testimony? These are tapes that were presented to the jury, I think as part of LaGuardia's testimony, but in any case, the tapes were played to the jury and they were given transcripts of the tapes in which the jury and in which the co-conspirators repeatedly referred to. The tapes were all about what is my brother in New Jersey or my contact in New Jersey to help us identify companies. I guess my question is, Uribe certainly says very explicitly, Juan told me many, many times that George is in it up to his eyeballs, so to speak, but Judge Bassler indicates that, how did you say his name, LaGuardia? LaGuardia as far as I know. Okay, that he also said things that indicated that he believed George was in it, and I'm just trying to tease that out a little bit. What did LaGuardia say or do that indicated George is in it? I think that the conversations that LaGuardia related that he had with the other co-conspirators were that they were relying on a customs official, specifically Juan's brother in New Jersey, in order to clear these shipments or in order to identify companies which would be safe. And then they relayed that he actually did clear this company and that they can go ahead and send the shipment now. And more specifically, that they didn't want this to come from Colombia, that they wanted it to come from some other place because Colombia was a hot place to send them. And your argument is that some of these statements implicating Jorge were taped? Yes. Several of them were taped. They're at the very end of my appendix. The transcript of these statements. But they're not Jorge's statements. No, they're Juan's statements. I mean, the court was addressing the general sufficiency argument. It wasn't addressing a pointed argument about what the words mean, because the evidence of that was sufficient. Why, if you had LaGuardia in court and actually testifying, why did you have tapes of LaGuardia? I'm not sure I understand how that got in. The government thought it was very important to corroborate the witnesses' statements. To corroborate whose, which witnesses' statements? Both LaGuardia and Uribe. LaGuardia and Uribe were both cooperating with the government. But wait a minute. LaGuardia was a government plant, right? Yes. Okay. So obviously he's cooperating. He's a government person. I mean, if you see The Wire, you see how they do those things. Okay. So they had his testimony. What was the occasion to get a tape of his testimony, of him, from him? Well, they created the tape as part of the investigation. And I imagine that they found the United States. Who's the they? The U.S.? The United States. He was being, his conversations, his telephone conversations, and I think it was his telephone conversations were being taped. His telephone conversations with some of the conspirators? Their telephone conversations with some of the conspirators. With Juan? With Juan. Right. With Uribe? Rav Vasarita, the person who we weren't able to, who fled, and we weren't able to bring to the United States. In Colombia? All in Colombia. And the tapes were introduced to corroborate his testimony in court? Yes, Your Honor. Certainly the defendant took great pains to increase the credibility of our two witnesses who had criminal involvement or were co-conspirators. Well, look, Rocherea wasn't a co-conspirator. He was a government plant. But they certainly did a pretty lengthy criminal history. Did he have a criminal history? He did have a lengthy criminal history. Oh, geez. But in this case he was a feigned accomplice. Yes. And so anticipating that there would be these kind of attacks on his credibility and not wanting to just be his words before the jury, the court introduced the tapes that corroborated his testimony. The Justice Department introduced the tapes. Yes, I'm sorry. Forgive me, the government. And the court allowed it in. Yes. Okay. Are you all right? Okay, thank you. Thank you, Your Honor. Your Honor, the government took the position that. . . Wait until you get on. . . Okay, you have to be on the tape. Okay. Your Honor, the government took the position that there was no joint venture, and the government also took the position that. . . No joint venture? Wait a minute. Let's put it in context. Between Columbia. . . Yes. And the United States. . . Yes. With respect to the investigation into the cocaine, the conspiracy to introduce 400 to 500,000 grams of cocaine. Thank you for saying it better than me, Judge. I didn't say it better. I just wanted to be sure it was out there. Yes. And the government also took the position that Joint Appendix 457 and 458 sufficed for Brady or Jenks Act disclosure, and we take the position that Brady really means anything that's favorable to guilt or punishment. Can you respond to the assertion in the briefing that even if this was Brady, that your client is on tape? I mean, the evidence of guilt against Juan is overwhelming, and he's sunk. And so even if you'd had this earlier letter and you'd been able to cross-examine him, beat him around the head and shoulders with him for a week, it wouldn't have made a difference because the jury had him sinking himself. Absolutely not, and I'll tell you why, Judge. The tape that the government is alluding to has Juan Rieros on there for about six seconds, and there's nothing inculpatory by the nature of what he says for approximately six or seven seconds. What does he say? He makes an allusion to shipping three. I think it was three. He says three. I think he says three. Well, what was he responding to? They were talking about the shipment of some bananas from Ecuador, if memory serves me correctly. But there was absolutely nothing in that tape that suggested that he was committing a crime without the interpretation of longitudinaria to answer the court's question. He wasn't in the business of importing bananas, was he? Well, he was in the business of importing. According to Langreteria's testimony, they discussed shipping three containers of computers to South America, used computers. Langreteria professed also to be in the computer business. He was paid $450,000 by the DEA, Langreteria, for doing this case and other cases, and he also, as part of the joint venture, traveled to Colombia to meet with Rafi, the other co-conspirator, to further this case. So in terms of the joint venture, I would suggest to the court that page 123 and 120 of the joint appendix establishes the joint venture. Specifically, according on 120, Uribe says, the starting point for the U.S. prosecutor was the declaration I gave to Munoz at the beginning of 2001. They had nothing, nothing, absolutely nothing. That's why no one was imprisoned. In other words, all there was was an initial computer charge, no drug charge. Wait, wait, wait. I'm sorry. So you're saying that because Colombia shared information with the United States that that made it a joint undertaking? Your Honor, I appreciate what you're saying. Well, I'm just asking a question. Yes, the answer is yes, in the context of $7.5 billion of U.S. money to establish a special relationship with a special bunker that's never been done in the history of this nation. So is your legal position that because the United States has given a large amount of aid to Colombia, that any time the U.S. government asks the Colombian government for assistance with something, that ipso facto there's a joint undertaking? No, what I'm saying, Your Honor, is that the due process clause independent of any order of the court, no order was necessary to compel the government to accord due process to these particular defendants and the prosecutor's oath of office, not the command of the court. Hold on a second. I don't think I'm getting an answer to my question. And here's what I'm trying to find out. As a legal position, well, first, let's establish this. If I can, I know we're over time. No, that's okay. There's a, in order for this to be Brady, do you agree that it's got to be effectively within the control of the United States? That it had to have been, in some sense, a joint undertaking? Able to reduce it to its control. Able to reduce it to its control with some effort, yes, absolutely. Yeah. Well, it's not just that, right, that Judge Bassler makes the point that unless they're effectively part of the prosecution team there in Colombia, this is a sovereign and their possession of it doesn't equate to American possession of it. Is he wrong? Well, he makes the factual predicate at page 59 of the joint appendix. He says that there's no evidence that Colombia was or is a part of the prosecution team. Right, but I'm not trying to get into the facts at this point. I'm just trying to understand your legal position, and then I want to discuss the facts with you. Is your legal position, his assertion, the trial judge's assertion is that unless there is a connection sufficient to say that it's, in effect, a joint prosecution, that's a separate sovereign and I can't attribute the possession that the Colombian government has to the American government. That's how I read what he's saying. Am I wrong about that? Yes, Your Honor, and I'll tell you why. Okay. Specifically, Judge ordered the government to contact the prosecutor in Well, sure, he may say you can ask them, go and try to get things, but as a basis for saying you have it if they have it, Judge Bassler seems to be saying that only works if they're hand in glove. Is he wrong about that? Well, if I might, his factual predicate was wrong based upon misrepresentations by the government. In other words, Judge Bassler's opinion was predicated upon the fact. Let me try this one more time. It's not that I'm uninterested in the facts, I am, but I'm trying to get the legal position, so let me ask it this way. What do you say, instead of me asking whether you disagree or agree with Judge Bassler, you tell me what do you say is the level of connection between the United States government and the Colombian government that would have to exist in order for one to say that what Colombia has, the United States has? If granted an evidentiary hearing, which is what Mr. Brown asked for, he would show that they work hand in hand. Now, let me piggyback on that for a minute. And is the government's position that that is proven by the letter that's at 118 to 124? The defense position is yes or no. The defense position, absolutely. Yes or no that it's supported by that letter, and that I would suggest is the tip of the iceberg. In other words, there's more than meets the eye. That's why I asked for a read-in. But you say that this is what gets you into it. Yes, Your Honor. Okay, go ahead. Yes, Your Honor. Okay. So then let's actually, that's satisfactory. The factual, once we have passed the legal part, the factual assertion is that if you look in this letter, you see the facts that show. Yeah, and most respectfully, Your Honor, what I would do is I would compare that. I would compare that to the government's affirmative representations at page 2956 of the supplemental appendix where the government makes the affirmative representation to Judge Bassler. They say there were no statements obtained by the Colombian government independent of the interview, which is memorialized in J61. J61 was the report of the customs agent's seven-hour interview with Mr. Uribe in the bunker. And when was that made? When that statement was made? December 14th, Your Honor. And that's during the – I'm sorry. Did you mean the statement that the prosecutor made or the statement that Uribe made? Right, right, right. No, the statement that the prosecutor made. December 14th, approximately the fifth to last day of trial. Right. Okay. And their assertion is, we didn't know about this until after trial, too. So you're asking us to look at that and say the government was misleading Judge Bassler, right? Well, not only that. On the next page, on the next page at 2957, the judge says, but how can you represent to me that the Colombian government didn't get any other statements from Uribe? The prosecutor says, I'll make a note to call, and the judge says, who should you call? Well, the prosecutor says at one – excuse me, at page, I think it's 2957 or 2956, Maria Cristina Munoz. She is the prosecutor there. That's her title. And then the government says she did not conduct a separate interview, but I will confirm this. We know there were multiple separate interviews. Okay. Thank you very much. Thank you, Your Honor. We'll take the matter under advisement. Linda? Please rise. This court stands adjourned until Friday, April 18th at 9.30 a.m. I'm not taking these things. I'll let the law clerks.  Yep.